IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NATHANIEL BELL,

Petitioner,

v.                                    CASE NO.  14-3056-SAC

JAMES HEIMGARTNER,
Warden, et al.,

Respondents.

MEMORANDUM AND ORDER

Upon screening this pro se petition for writ of habeas corpus, the court entered a Memorandum and Order requiring Mr. Bell to satisfy the statutory filing fee and submit his petition upon forms in which he showed exhaustion of state court remedies and that his procedural default in state court should be excused.  In addition, petitioner was ordered to show cause why this action should not be dismissed as time-barred.  In response, petitioner paid the filing fee and submitted his petition upon forms as directed with 125 pages of attachments. Having examined the materials filed by Mr. Bell, the court finds that petitioner has failed to show good cause for the late filing of his federal petition, failed to show exhaustion, and failed to overcome the procedural default of his claims. Accordingly, this action is dismissed.

1

# I.   FAILURE TO SHOW THAT PETITION SHOULD NOT BE DISMISSED AS TIME-BARRED

In its prior Memorandum and Order, the court set forth the following background facts:

> In 2003, Mr. Bell was convicted upon trial by jury in the District Court of Sedgwick County, Kansas of first-degree premeditated murder and sentenced to life without parole for 25 years.[1]   He appealed to the Kansas Supreme Court (KSC), which affirmed on October 28, 2005.
>
> *   *   *
>
> State court records indicate that Mr. Bell filed at least two state post-conviction motions.   On October 4, 2006, he filed his first pro se motion pursuant to K.S.A. 60-1507.   The trial court denied the motion following a non-evidentiary hearing, and Bell appealed to the Kansas Court of Appeals (KCA).
>
> On October 26, 2011, Mr. Bell filed a second 60-1507 motion in which he contended that "his trial counsel was ineffective for failing to request a competency examination."   *Id.*   "Without holding a hearing or appointing counsel for Bell, the district court dismissed the motion as impermissibly successive and untimely. . . ."   *Id.*   The KCA found that Bell had "effectively raised and then abandoned" his "successive claim based on the absence of a competency examination before his trial."   *Id.* at *2.

The KCA affirmed on June 14, 2013, and the KSC denied review on November 22, 2013.   The instant federal habeas corpus petition was electronically filed on April 7, 2014.

---

[1]   "The jury found Bell stabbed another man to death after partying at the victim's apartment."   *Bell v. State*, 302 P.3d 45, *1 (Kan.App. June 14, 2013), *review denied*, (Kan. Nov. 22, 2013).   At trial, Bell presented the defense of self-defense.   Other persons present at the time of the stabbing testified at trial.

Based on these tentative facts, this court previously found that Mr. Bell's federal petition appeared to be time-barred citing 28 U.S.C. § 2244(d)(1) and (2). The court explained its calculations as follows. Mr. Bell's conviction became "final" on January 26, 2006, which was ninety days after completion of his direct appeal, and the limitation period began on that date and "ran without interruption until Bell filed his first 60-1507 motion on October 4, 2006." At "that point 251 days of the one-year period had expired, and 114 days remained." The limitations period was then tolled during the pendency of petitioner's two state collateral proceedings, but recommenced when his latest state post-conviction proceedings concluded on November 22, 2013. It then "ran unimpeded until it expired 114 days later on March 16, 2014." As noted, Mr. Bell did not file his federal petition until April 7, 2014.

Mr. Bell was notified that without additional tolling, his federal petition was subject to dismissal as time-barred and that he must show exceptional circumstances in order to be entitled to equitable tolling. As Mr. Bell was informed, a petitioner seeking equitable tolling bears the burden of establishing that he diligently pursued his claims throughout the period he seeks to toll and that "'some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Wallace v. Kato*,

549 U.S. 384, 396 (2007)("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure all for an entirely common state of affairs."); *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir.), *cert. denied*, 525 U.S. 891 (1998); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000)(Equitable tolling "is only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control."), *cert. denied*, 531 U.S. 1194 (2001).  He was further informed that the Tenth Circuit has stated that equitable tolling "would be appropriate, for example, when a prisoner is actually innocent, when an adversary's conduct--or other uncontrollable circumstance-- prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period." *Burger v. Scott*, 317 F.3d 1133, 1141 (10th Cir. 2003); *Miller*, 141 F.3d at 978; *Gibson*, 232 F.3d at 808 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).  He was ordered "to fully address the timeliness issue" in his new petition.

In response to the timeliness question in his new petition, Mr. Bell generally alleges that upon appealing "they" assign an attorney "that will not represent your interest" but "will file pointless motions . . . and late petitions that will enable the

4

State to time-bar a defendant's petition." He further alleges that he "requested for each of his court-appointed appellate attorneys to preserve important issues and to file his petitions in a timely manner;" however, "the assigned attorney chose not to follow establish criminal procedure." He claims this "appears to be a common practice here in the State of Kansas." He also alleges that "during each stage of this appeal process, (he) was confronted with an attorney that either refused to preserve triable issues or failed to file petitions in a timely manner." Petition (Doc. 3) at pg. 14.

These allegations are nothing more than conclusory statements. Petitioner blames the late filing of his federal habeas corpus petition on the attorneys appointed to represent him on his appeals in state court. His exhibits indicate that he was represented by Appellate Defender Hodgkinson on direct appeal[2] and Attorney Whalen on his first collateral appeal. However, he describes no specific act or inaction on the part of either Hodgkinson or Whalen and provides no explanation as to how either caused him to file his federal petition two weeks late or impeded him from filing on time. He generally complains

---

[2]    His attachments also show that after affirmance by the KSC, Hodgkinson advised him of "various post-appeal options," that the office could not assist him further, and that his case would be closed. After petitioner filed his pro se 60-1507 motion in 2006, he moved for appointment of counsel, and Ternes was appointed to represent him. After the 60-1507 motion was denied, Ternes filed a notice of appeal.

that appellate counsel failed to file timely motions, but does not identify the type of motion, which attorney neglected to file it, or relevant dates including when the motion should have been filed as opposed to the date it was actually filed, together with the outcome.[3] He certainly does not allege facts to establish that a particular appellate counsel's conduct amounted to more than "a 'garden variety claim' of attorney negligence." *Holland*, 560 U.S. at 651. Nor has Mr. Bell provided a copy of or described requests sent by him to counsel regarding each issue, or responses he received from counsel together with the approximate dates of requests and counsel responses. Prisoners bear the burden of demonstrating that exceptional circumstances hindered their effort to pursue claims, but Mr. Bell has offered nothing more than his own self-serving declarations to support his allegations that appellate counsel prevented him from raising his claims on direct and collateral appeal. The court concludes that petitioner's general allegations are simply insufficient to justify equitable tolling *Cf. Miller*, 141 F.3d at 978.

---

[3]     A letter among petitioner's attachments from attorney Cotton informed him that Mr. Whalen failed to timely file a Petition for Review in Case 10CV3919, but a judge had ruled that this was grounds to allow a Petition for Review out of time, and that Cotton had filed the Motion and Petition for Review. Doc. 3-1 (Letter dated July 11, 2011) pg. 31. Cotton later notified petitioner that his Petition for Review was accepted for filing but review was then denied. *Id.* at pg. 32. On December 13, 2011, Cotton notified petitioner that "this ends our representation of you in this matter." Petitioner does not refer in his petition to any of his numerous attachments and explain their import.

In addition, Mr. Bell has not described in sufficient detail his own efforts to pursue his state court remedies on these claims under the proper state procedures. He simply alleges no facts establishing that he diligently pursued his claims during the 251-day period between January 26, 2006, and the filing of his first 60-1507 motion on October 4, 2006. He likewise fails to describe how he diligently pursued his claims during the 114-day period that began when his second state post-conviction proceedings concluded on November 22, 2013, and ended on March 16, 2014. An inmate is required to allege with specificity the steps he took to pursue his federal claims. *Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008); *Miller*, 141 F.3d at 978 ("In the final analysis, [petitioner must show] the steps he took to diligently pursue his federal claims."). In sum, Mr. Bell fails to show that his appellate counsel, rather than his own lack of diligence, caused him to file his federal petition two weeks late. As a result, the petition is time-barred. Accordingly, this action is dismissed with prejudice and all relief is denied.

Furthermore, petitioner's general allegations that his appellate attorneys refused or failed to raise issues and failed to file timely motions amount to separate challenges to his state court convictions that do not appear to have been exhausted in state court prior to the filing of this federal

7

petition.   There is nothing in the record suggesting that petitioner filed an action claiming ineffective assistance of appellate counsel prior to seeking relief in this court.

## II.  FAILURE TO SHOW EXHAUSTION

Even if the petition were not time-barred, this action would be dismissed for failure to show exhaustion.   In his original federal petition, Mr. Bell raised the single claim that he was denied his Sixth Amendment right to effective assistance of trial counsel.   In support, he alleged that his trial counsel failed to request a competency evaluation after petitioner said he was having difficulty thinking and understanding the proceedings and was seeing dead people, and "failed to reveal psychological test result to the defendant."   He alleged that he suffered prejudice because he was incompetent.

In his new petition, Mr. Bell raises three grounds: (1) the State of Kansas violated due process in connection with a court-ordered psychological evaluation;[4] (2) "prosecutorial misconduct" in that the "State of Kansas withheld critical evidence, IE,

---

[4]      As facts in support of this claim, petitioner alleges that the trial court ordered a "psychological evaluation" at the request of his trial lawyer Alice Osburn, but upon completion of the examination the "examining doctor did not send its report to the court."   He baldly claims that the report had a "direct barring" and "would determine his innocence or guilt of the crime." However, petitioner provides no information as to the contents of this report or any explanation as to why it must have been provided to the court.

report from psychological evidence of self-defense;"[5] and (3) violation of Sixth Amendment right to effective assistance of trial counsel in that "counsel did not request for report from examination, of which could have established reasonable doubt in a first degree prematated (sic) case."[6]

In grounds (2) and (3) petitioner does not clearly refer to a particular report. He based some of his claims in state court on three different reports: a competency examination report, his psychological evaluation report, and the victim's toxicology report. No pre-trial competency examination report was prepared because a competency exam was not requested by the defense, the State, or the court; and Mr. Bell did not claim he was incompetent until years after his trial. With regard to grounds (1) and (2), a psychological evaluation was ordered at defense counsel's request and completed, but was not presented at trial. It is not unusual for such a report to not be presented at trial if the results were not favorable to a defense theory, and petitioner does not suggest how this violated the Constitution

---

[5]    What report petitioner is referring to in this claim is not at all clear, and again he fails to describe its content or explain its import. He alleges that this claim was not raised on direct appeal or in his post-conviction appeals. Thus, the appellate court opinions shed no light on the content of this report or the basis for this claim.

[6]    Again, petitioner does not adequately describe the "report that counsel did not request." His use of the word "examination" suggests he is claiming that trial counsel failed to do something with the psychological evaluation/examination report. However, he also alleges that this claim was not raised on direct appeal but was raised on collateral appeal of his "first 60-1507," where only the victim's toxicology report was at issue.

in his case.   A toxicology report on the victim was prepared, defense counsel was given a copy prior to trial, and its contents were discussed at trial.

The court finds that Mr. Bell fails in his new petition to state recognizable constitutional claims and clear facts in support.  His three grounds might be dismissed on this basis.

With respect to exhaustion of state court remedies, petitioner alleges the following in his new petition.  Counsel would not raise ground (1) on direct appeal, but petitioner raised it in his first 60-1507 motion, which was pro se. However, it was not raised on collateral appeal of the denial of that motion because appointed counsel "abandoned the issue" and refused to raise it "even after the petitioner requested that he present this argument in attorney's brief."  Thus, according to petitioner's own allegations, ground (1) was not presented to the highest state court.  The same is true of ground (2). Petitioner did not raise ground (2) on either direct or collateral appeal and states that he did not exhaust this claim because "[c]ourt appointed attorney abandoned this issue . . . refused to present requested issues."  Petitioner did not raise ground (3) on direct appeal because "[a]ppellate attorney choose not to preserve or present this issue, even though petitioner request to do so."  He alleges that he raised this ground in his 60-1507 motion "and appeal of denial," without specifying his

10

first or second, and then makes the contradictory allegation that this issue "was abandoned by court appointed attorney." However, as noted the only report referenced on his first collateral appeal was the victim's toxicology report.   In his first 60-1507 motion, he claimed that the court had failed to request a competency examination and on his second collateral appeal that his trial counsel was incompetent for failing to request a competency examination.   The KCA found that this claim was successive and that he was simply trying to "repackage it" as an ineffective assistance of counsel claim.[7]   Thus ground (3) in the instant petition does not appear to be a challenge to the lack of a competency examination.

The court could deny the new petition because it fails on its face to plainly show exhaustion of state court remedies. Instead, to resolve the exhaustion issue the court has also considered the relevant written opinions of the state appellate courts, which are exhibited by Mr. Bell.   On direct appeal, the KSC found that "Bell's principle contention" was "that his consumption of alcohol and drugs the evening before his interrogation affected the voluntariness of his statement."

---

[7]     The KCA found the trial transcript showed that Bell, who testified at trial, was "coherent and well oriented" and that "[t]here remains nothing to suggest Bell was incompetent or that the district court would have granted a request from counsel for a psychological examination."   They concluded that "[simply] put, Bell gave no indication of incompetence to stand trial." *Bell v. State*, 302 P.3d 45 at *2.

*State of Kansas v. Bell*, 280 Kan. 358, 121 P.3d 972, 976 (Kan. 2005).   On this basis, he "claimed that his statement made during police interrogation should have been suppressed."   He also claimed that "the trial court erred in giving Jury Instruction 11,"[8] *id.* at 977, and that "he was denied a fair trial by the prosecutor's misstatements of fact and law."[9]   *Id.* at 979.   It is thus clear from the KSC opinion on petitioner's direct appeal that the three grounds raised in his federal petition were not among those raised on direct appeal.

---

[8]   "Bell was charged with first-degree murder and the jury was instructed on voluntary manslaughter as a lesser offense."   *State v. Bell*, 121 P.3d at 978.   "[T]he basic premise of his argument (was) that either heat of passion or an honest but unreasonable reliance on self-defense would reduce first-degree murder to a lesser offense."   *Id.* at 978.   The KSC disagreed, reasoning that

> the jury was properly instructed that intentional second-degree murder might be reduced to voluntary manslaughter if committed with an honest but unreasonable belief that circumstances justified the use of deadly force in self-defense.   But premeditated first-degree murder would not be reduced by an honest but unreasonable reliance on self-defense because, as with premeditation and heat of passion, the two are mutually exclusive concepts.   If murder were committed with premeditation, it would not be the result of an unreasonable but honest belief that circumstances justified deadly force.   Premeditation requires reason; imperfect self-defense requires the absence of reason.

*Id.* at 979.

[9]   "Bell complained that the prosecutor misstated a fact relevant to his theory of self-defense by stating in closing argument: 'Did anybody tell you that there was a beer bottle, no nobody did.'"   *State v. Bell*, 121 P.3d at 979.   The KCA found that even if this was a misstatement of the evidence, it "did not so prejudice Bell that he should be granted a new trial."   *Id.* at 980.   Bell also complained that the prosecution misstated the law regarding voluntary intoxication during closing by asking whether Bell's "intoxication was so great that it overcame his ability to think."   *Id.* at 981.   The court found that this was a misstatement of the law, but that there was no prejudice because the trial court's jury instructions provided the correct legal standard for the jury.

In October 2006, Bell filed his first pro se motion pursuant to K.S.A. 60-1507 in which he alleged: "(1) The district court failed to conduct a competency hearing pursuant to K.S.A. 22-3302; (2) the prosecutor violated Bell's right to a fair trial by withholding exculpatory evidence about the victim's toxicology report during its questioning of the coroner; (3) ineffective assistance of counsel because his trial counsel failed to file a motion for discovery and inspection pursuant to K.S.A. 22-3212; and (4) ineffective assistance of counsel based on his trial counsel's failure to cross-examine the coroner's finding in the toxicology report regarding the presence of drugs in the victim." See *Bell v. State*, 207 P.3d 288, *1 (Kan.App. 2009). This motion was denied without an evidentiary hearing. Bell appealed to the KCA claiming "he was entitled to an evidentiary hearing (1) to determine whether the State withheld exculpatory evidence from the defense, namely (the victim's) toxicology report, in violation of *Brady*[10] . . .;

_____

[10] Petitioner argued that "Felix's toxicology report was material to his self-defense claim because the report would have supported Bell's assertion that Felix was the initial aggressor due to the presence of drugs in his system." *Id.* at *2. The court first noted that this claim was "procedurally barred because Bell failed to state any exceptional circumstances for not raising" it on direct appeal and a "60-1507 motion cannot be used as a substitute for a second appeal." *Id.* They further held that the argument failed on the merits. *Id.* Their main basis for so holding was that defense counsel told the court during trial that she had received a copy of Felix's toxicology report, which "was negative concerning the presence of drugs in Felix's system" other than alcohol. *Id.* at *3. Defense counsel disclosed this fact to the court when she explained, during an objection, that the defense theory was self-defense and she wanted to admit testimony that Felix had been acting aggressively toward Bell as a result of his NOT being on "his

and (2) to determine whether defense counsel's failure to file a motion for discovery of (the victim's) toxicology report constituted ineffective assistance of counsel." *Id.* He was represented by counsel on that appeal. The KCA specifically found that petitioner did not argue the other issues raised in his K.S.A. 60-1507 motion and that any issues not briefed were deemed waived or abandoned. *Id.* The KSC denied review on October 24, 2011. Thus, the only claims fully exhaustion in these proceedings concerned the victim's toxicology report.

In 2011, Bell "filed a motion to correct an illegal sentence, arguing that the district court's failure to order a competency examination violated his due process rights." See *Bell v. State*, 302 P.3d 45, *1 (Kan.App. June 14, 2013), *review denied* November 22, 2013. This motion was denied.[11]  Bell did

---

medication" (antidepressants). *Id.* The KCA noted that Bell was claiming in his 60-1507 "that Felix was the initial aggressor due to the presence of drugs in his system," and stated that "[e]ither way, the record reflects that defense counsel had received a copy of Felix's toxicology report at the time of trial." *Id.*

[11]  The judge that decided this motion noted that Bell claimed "for the first time in his 2011 motion that he was not competent to stand trial in 2003, and that his sentence was illegal because "the Court never conducted a competency hearing to determine Defendant's competency to stand trial after a psychological evaluation of Defendant by a local psychologist was done at defense request." Doc. 3-1, pg. 26. The judge found that Bell

> obviously confuses a <u>psychological evaluation of Defendant</u> for purposes of trying to establish the defense of lack of mental state pursuant to K.S.A. 22-3219 (done by defense to see if there are psychological issues which can be used as a defense at trial relative to specific states of mind necessary for a conviction . . .) with a <u>Motion to Determine Competency</u> pursuant to K.S.A. 22-3301, et seq. ((done on motion of defense, state or Court when there is concern the Defendant is unable to understand the nature and purpose of the proceedings against him and/or to make or

not appeal this ruling.  *Id.*  It follows that no claim was fully exhausted by way of this motion.

On October 26, 2011, Bell filed his "second motion under K.S.A. 60-1507," this time alleging that his trial counsel was ineffective for failing to request a competency examination, which was denied by the district court without counsel or a hearing as "impermissibly successive and untimely."  *Id.* at *1. A timely appeal was filed, and petitioner was represented by Whalen on this appeal.  The KCA agreed that this second motion was barred as "plainly successive" and that Bell had "not shown any grounds demonstrating exceptional circumstances that would support lifting that bar."  *Id.*  They also noted there was "nothing to suggest Bell was incompetent," that the trial transcript, which included his own testimony, showed Bell "to be coherent and well oriented," and that he "gave no indication of incompetence to stand trial."  302 P.3d 45, at *2.  A timely appeal of this decision was filed, and the KSC denied review on November 22, 2013.  Since the claims in these proceedings were dismissed in state court as successive, even if any were the same as one that Mr. Bell is trying to present in federal court,

---

assist in making his defense))."

The judge further found that no competency motion was filed, but that the "defense filed a motion for a psychological evaluation, arguably to see if a defense of lack of mental state could be developed," and explained that the defense "does not have to disclose the results of the evaluation to either the State or the Court if they are not seeking to use it at trial."  *Id.*

exhaustion would only be shown in a technical sense and petitioner would have to overcome procedural default.

The court emphasizes that Mr. Bell does not present ineffective assistance of appellate counsel as a ground in his federal petition.  Instead, he alleges it only as his excuse for failure to exhaust each ground he does raise.  As noted, these allegations are nothing more than conclusory statements.  Moreover, the allegation that appellate counsel was ineffective for failing or refusing to raise viable constitutional claims amounts to a separate claim that must have been exhausted in state court prior to being raised in a federal habeas petition.[12] The court's review of the state court opinions establishes that this claim has not been exhausted.

III.   **FAILURE TO SHOW CAUSE AND PREJUDICE FOR PROCEDURAL DEFAULT**

This court found in its prior order that Mr. Bell failed to fully exhaust his ineffective assistance of trial counsel claim when he had the opportunity and that this claim was eventually

---

[12]    Judicial scrutiny of counsel's performance starts with the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  Determining which issues to raise on appeal requires counsel to exercise professional judgment.  "It is completely reasonable, and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed." *Jackson v. Shanks*, 143 F.3d 1313, 1321 (10th Cir. 1998).  A court will not find failure to raise a colorable issue on appeal ineffective unless the omitted issue would have been a "dead bang winner." *United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995).

dismissed by the state courts as successive and untimely. Petitioner was advised that when a "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule,[13] federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 724 (1991); *Hume v. McKune*, 176 F.Supp.2d 1134, 1140 (D.Kan. 2001). He was further advised as to the showings he was required to make to establish cause and prejudice or the miscarriage of justice exception. Other grounds raised in the federal petition that were not exhausted, as well as his allegation of ineffective assistance of appellate counsel, are likewise subject to dismissal based on anticipatory default.

Mr. Bell makes no overt attempt to demonstrate cause and prejudice in his new petition. His conclusory allegations that his appellate attorneys failed or refused to raise or preserve issues despite his requests and filed untimely motions are proffered as grounds for equitable tolling to excuse the

---

[13]   The state court holdings in petitioner's second post-conviction proceedings that Mr. Bell's claim was barred as successive were based on K.S.A. § 60-1507(c), which provides that Kansas courts will entertain a successive 60-1507 motion only in "exceptional circumstances." This provision constitutes an independent and adequate state procedural grounds that has been evenhandedly applied.

untimeliness of his petition.   Even if they are liberally construed as proffered in connection with this issue, they are not supported with sufficient facts to establish cause and prejudice.

Furthermore, before a habeas petitioner can use the claim of ineffective assistance of appellate counsel as cause for procedural default, it too must have been exhausted in state court.[14] As the Supreme Court explained:

> The procedural default doctrine and its attendant "cause and prejudice" standard are "grounded in concerns of comity and federalism," *Coleman v. Thompson*, 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack, *Murray v. Carrier*, 477 U.S. [at 490-492].   "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. [at 732].   We therefore require a prisoner to demonstrate cause for his state-court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim. *Id.*, at 750, 111 S.Ct. 2546.   The one exception to that rule, not at issue here, is the circumstance in which the habeas petitioner can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice. *Ibid.*

---

[14]   Ineffective assistance of counsel may establish cause excusing a procedural default. *Jackson v. Shanks*, 143 F.3d 1313, 1319 (10th Cir. 1998). However, an applicant must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule" and have "presented to the state courts [ ] an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986).

> Although we have not identified with precision exactly
> what constitutes "cause" to excuse a procedural
> default, we have acknowledged that in certain
> circumstances counsel's ineffectiveness in failing
> properly to preserve the claim for review in state
> court will suffice. *Carrier*, 477 U.S.[at 488-489].
> Not just any deficiency in counsel's performance will
> do, however; the assistance must have been so
> ineffective as to violate the Federal Constitution.
> *Ibid.* In other words, ineffective assistance adequate
> to establish cause for the procedural default of some
> other constitutional claim is itself an independent
> constitutional claim. And we held in *Carrier* that the
> principles of comity and federalism that underlie our
> longstanding exhaustion doctrine—then as now codified
> in the federal habeas statute, see 28 U.S.C. §§
> 2254(b), (c)—require that constitutional claim, like
> others, to be first raised in state court. "[A] claim
> of ineffective assistance," we said, generally must
> "be presented to the state courts as an independent
> claim before it may be used to establish cause for a
> procedural default." *Carrier*, supra, at 489, 106
> S.Ct. 2639.

*Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

In short, Mr. Bell has not alleged facts to establish cause for his procedural default of his three grounds. Furthermore, he alleges no facts whatsoever to suggest his actual innocence or other manifest injustice.


## IV.  CONCLUSION

The court concludes from the foregoing that the petition is time-barred. In addition, the court finds that Mr. Bell has failed to state cognizable claims, failed to show exhaustion of state court remedies, and failed to show that his procedural

default should be excused.  For these reasons, this petition is denied.


## V.  EVIDENTIARY HEARING

"[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro* 550 U.S. at 474.  Because all of petitioner's claims and arguments have been resolved on the record, no evidentiary hearing is necessary. *Anderson v. Attorney General of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005).


## VI.  CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Proceedings provides that the court must issue or deny a COA when it enters a final order adverse to the applicant.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); see *United States v. Bedford*, 628 F.3d 1232 (10th Cir.

2010).  When a claim is denied on procedural grounds, "the petitioner seeking a COA must show both 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Gonzalez v. Thaler*, 132 S.Ct. 641, 648 (2012)(quoting *Slack*, 529 U.S. at 484). Petitioner has not met these standards as to any issue presented.  Accordingly, no certificate of appealability is granted.

**IT IS THEREFORE ORDERED** that this habeas corpus petition is dismissed and all relief is denied.

**IT IS SO ORDERED.**

Dated this 17th day of July, 2014, at Topeka, Kansas.




**s/Sam A. Crow**
**U. S. Senior District Judge**